### In re BUCKINGHAM.

(District Court, D. Ohio, E. D.   January 20, 1900.)

#### No. 334.

HOMESTEAD — SECOND ALLOWANCE FROM PROCEEDS OF SALE OF REAL ESTATE —BANKRUPTCY.

Under Rev. St. Ohio, § 5440, providing that when a homestead is charged with liens, some of which preclude the allowance of a homestead, and a sale of such homestead is had, then, after payment of the liens precluding such allowance, the balance, not exceeding $500, shall be awarded to the head of the family, where the proceeds from the sale of real estate, out of which a widow, who is the head of a family, is allowed the sum of $500 in lieu of a homestead, are entirely consumed in the payment of mortgages executed by the widow against the property, and as to which her homestead right has been waived, the widow is not precluded from subsequently claiming a homestead exemption out of the proceeds of the sale of other real estate in the hands of a trustee in bankruptcy.

The following is the opinion of DOYLE, Referee:

This is a hearing upon exceptions to the determination of the trustee in setting off exemptions to the bankrupt. The exception is to the determination of the trustee in setting off to the bankrupt, in lieu of a homestead, the balance of the proceeds of the sale of certain real estate which were turned over to the trustee by the sheriff of Summit county. The facts in the case are as follows: On October 9, 1899, Frances P. Buckingham filed her petition in the district court in voluntary proceedings in bankruptcy, and was on said day duly adjudged a bankrupt. The petition discloses that the bankrupt was the owner of certain interests in real estate, which were heavily incumbered by mortgage and judgment liens. This real estate was all involved in partition suits pending in the court of common pleas of Summit county, Ohio, and decrees had been taken therein prior to the commencement of the bankruptcy proceedings. The property has been disposed of by the sheriff, and the proceeds applied in the manner provided for by the decree of said court; and a balance of $308.99 of the proceeds of the sale of lots and lands in one of said partition suits, after payment of the liens provided for under the decree of the court, has been turned over to the trustee in bankruptcy. This is the money out of which the trustee has made an allowance to the bankrupt in lieu of a homestead. The bankrupt has no homestead, and is a widow. One of said suits involved her interest in certain lots and lands, which, for convenience, we shall designate as parcel No. 1. Another suit involved her interest in certain lots and lands, which, for convenience, we shall designate as parcel No. 2. On parcel No. 1 there were a number of judgment liens, of which Newton Chalker was the owner of one, which came first in the order of priority, and next two mort-

gages which followed said judgment liens in the order of priority. The court found in that case that Frances P. Buckingham was a widow, and a resident of the state of Ohio, and not the owner of a homestead; that, as against the judgment liens (of which Newton Chalker's was one) found and established in said case, she was entitled to have set off to her out of the proceeds of the sale of said property the sum of $500 in lieu of a homestead against said judgment lien holders; that by giving her said mortgage to the plaintiff, and her second mortgage to the defendant Laberta Laidlaw, she had released to them her homestead right. It was therefore ordered by the common pleas court that there should be paid to the plaintiff the sum of $455.05 in full of plaintiff's mortgage, and that the remaining balance of said $500 should be paid to Laberta Laidlaw to apply on her second mortgage. The claims of said judgment creditors were not satisfied out of the proceeds of said property, and the mortgages absorbed the whole of Mrs. Buckingham's exemption in lieu of a homestead. In the other suit, involving what we have designated as parcel No. 2, the property was disposed of, and the proceeds applied to the payment of liens as against which there were no exemptions; and the balance of $308.99 was by the sheriff turned over to the trustee in bankruptcy in this case, and is now the subject of bankrupt's claim for an exemption. The trustee has set apart this sum to be retained by the bankrupt in lieu of a homestead, she having selected the same. The judgment creditors, represented by Newton Chalker, Esq., one of their number, who have judgment liens on said parcel No. 2, out of the proceeds of which said $308.99 came, excepted to the said exemptions set off by the trustee. It is contended by the creditors that said bankrupt has already had set off to her the $500 to which she is entitled in lieu of a homestead to hold exempt from levy and sale, out of the proceeds of parcel No. 1, and that she cannot now claim any exemption of like character out of the proceeds of the sale of parcel No. 2. On the other hand, bankrupt contends that she has not in fact had set off to her the exemption to which she is entitled, under the laws of Ohio, in lieu of a homestead, because the proceeds of parcel No. 1 were entirely absorbed by the liens thereon.

The bankruptcy act does not of itself prescribe any exemptions. The only exemptions to which bankrupts are entitled are those to which they may be entitled by the states in which they resided at the time of the filing of their petition in bankruptcy. The question, then, to be determined in this case, is whether, under the statutes of Ohio and the decisions of Ohio courts, Mrs. Buckingham would be entitled to have this money set over to her in lieu of a homestead. Bankr. Act 1898, § 6; Id. § 2, subd. 11; Id. § 47a, subd. 11: rule 17 of the supreme court orders and rules in bankruptcy (18 Sup. Ct. vi.). See, also, In re Kerr, 9 N. B. R. 566, Fed. Cas. No. 7,729; Brandenburg, Bankr. 79; In re Camp, 1 Am. Bankr. R. 165, 91 Fed. 745; In re Stevenson, 2 Am. Bankr. R. 230, 93 Fed. 789.

Section 5441, Rev. St. Ohio, provides as follows: "Husband and wife, living together, a widower living with an unmarried daughter or minor son, every widow and every unmarried female, having in good faith the care, maintenance and custody of any minor child or children of a deceased relative, residents of Ohio, and not the owner of a homestead, may, in lieu thereof, hold exempt from levy and sale, real or personal property to be selected by such person, his agent or attorney, at any time before sale, not exceeding five hundred ($500) dollars in value, in addition to the amount of chattel property otherwise by law exempted." The personal property mentioned in said section is held to include credits or money. Chilcote v. Conley, 36 Ohio St. 545. Section 5440, Rev. St. Ohio, provides as follows: "When a homestead is charged with liens, some of which, as against the head of the family, or the wife, preclude the allowance of a homestead to either of them, and others of such liens do not preclude such allowance, and a sale of such homestead is had, then, after the payment, out of the proceeds of such sale, of the liens so precluding such allowance, the balance, not exceeding five hundred dollars, shall be awarded to the head of the family, or the wife, as the case may be, in lieu of such homestead, upon his or her application, in person, or by agent or attorney." This money in the hands of the trustee is subject to the same rules of distribution as though it were still in the hands of the sheriff. If the sheriff were distributing the money, he would, under the circumstances, be subject to the provisions of the statutes

of Ohio, above quoted. Now, if the bankrupt had not received allowance as an exemption out of the proceeds of the sale of the other parcel of land, there would be no question about her right to retain this money which has been turned over to her by the trustee. It is undoubtedly true that successive allowances in lieu of a homestead at unreasonably short intervals of time would not be allowed. Nor would more than one allowance be made out of the same property. The object of the exemption and homestead laws is to protect the family and keep it from want. When there is no homestead, the law provides that the head of the family may retain $500 in lieu thereof, in addition to certain specific chattels, which are exempt. Not only is this provision humane and just to those dependent on the head of the family for sustenance and support, but it is also a wise provision to protect the community, in many cases, from the necessity of supporting those who, through want of frugality and prudence, might be a charge upon the town, on account of their property being all taken to satisfy the demands of creditors. Creditors are allowed to exhaust a man's property until he is reduced to a certain amount. They cannot reduce it below that. The law protects him in the enjoyment of property · in the amount of $500. This $500 may be by him consumed for his support and the support of his family, and he may use it in other ways, and then acquire other property out of which he would be entitled to the same amount of allowance exempt from levy and sale on execution. It is not contemplated by the statute that the debtor, having once received his exemption, can never receive it again. A man, in the course of a lifetime, through the various vicissitudes· of fortune, might own many homesteads, and as many times ask the protection of the law to save said homestead from sale on execution. He might be called upon many times to exercise the same right in respect to those specific chattels which are exempted under the law, and he also might find it necessary to assert his rights to have saved to him, as exempt from execution, the allowance of $500 allowed in this state in lieu of a homestead. To say that the debtor, having once had this exemption set off to him, was thereafter barred from having the exemption set off again, would defeat the object of the statute. If, at the time the creditor attempts to subject certain property of the debtor to the payment of his claim, the debtor should select that property as the property out of which he wished the allowance of his exemption to be made to him, and he has other property subject to levy, and the creditor should then turn about and levy upon that property, we do not believe that the debtor could also claim an exemption out of the other property at that time. But after the creditor had waited any considerable length of time, during which it might reasonably be expected that the debtor had consumed or used or wasted, without fraudulently contriving to consume, use up, or waste the same for the purpose of defrauding his creditors, we see no reason why the debtor might not claim an allowance of the exemption, if he had no homestead, and did not have $500. Unless such an equitable rule be followed in the interpretation and application of this statute, its objects will be defeated. Exemption laws are to be liberally construed to accomplish the purpose of the exemption. In re Tilden, 1 Nat. Bankr. N. 134, 1 Am. Bankr. R. 300, 91 Fed. 500; Sears v. Hanks, 14 Ohio St. 298, 301. By such a construction as this no violence is done to the letter of the law. The statute, without reservation, provides for the $500 exemption as against levy and sale on execution; and there is nothing to prevent a man, as soon as one exemption is allowed him, from squandering the same in time to make another claim before other property can be levied on and put up for sale.

In the case at hand the bankrupt, it seems, while apparently securing her exemptions by the decree of the common pleas court, in fact received nothing. The court ordered that there be set off to her in lieu of a homestead the $500 to which she would have been entitled by the statute, but the $500 was in fact consumed by the mortgages on the property pursuant to that decree. This is exactly what would have happened in the distribution of the proceeds of a homestead under the provisions of section 5440. The judgment creditors against whom she could claim this exemption complained because the mortgages against which she could not claim the exemption absorbed all the property. In the face of the positive provisions of section 5440, we do not see how any other disposition could have been made of the property in that case.

It was unfortunate for them that she had mortgaged the property. It was also a great hardship that she had given mortgages which were second to their judgment liens in priority. But, considering the status of the law on the subject,—that, as against a mortgage executed by the debtor, no exemption can be claimed,—we do not see how they could have expected any different outcome, when the debtor's property was subjected to the payment of debts. Creditors are presumed to know the law as well as other citizens. This is one of the vicissitudes of giving credit. The debtor has as much right to mortgage his property as he has to incur an indebtedness in any other way. It is a general principle of business that the man who receives security is the least likely to fail to collect his debt. The creditor who does not take security takes his chances against not only the misfortunes of his debtor, but also the positive acts of his debtor in securing other creditors. It may be true, as counsel for the creditors argue, that if a second mortgage can absorb an exemption, as it did in this case, there is nothing to prevent a debtor from putting a mortgage on every piece of property secondary to judgment liens thereon, and thus defeat the judgment liens by reason of this allowance in lieu of a homestead exemption; but what other practical administration of the provisions of section 5440 can be made, than to bring about just such a result? The humane policy of the homestead act does not seek the protection of the debtor, as is well said by the court in Sears v. Hanks, 14 Ohio St. 298, 301, but its object is to protect his family from the inhumanity which would deprive its dependent members of a homestead. This, we take it, will apply to the provisions in lieu of a homestead as well as to a homestead. It seems to be the policy of the law that the acts of the head of the household shall not, so far as the exemption laws are concerned, deprive the family of the protection of its provisions. Homestead exemption statutes are not a personal privilege. The object is to preserve a family home. When a man ceases to be the head of a family or acquires a homestead, the right ceases. If this right ceases before the fund is disposed of, then the money would go to creditors. If his family die, or he acquire a homestead, his exemption stops. Cooper v. Cooper, 24 Ohio St. 488, 490. The making of a mortgage is virtually a waiver of these exemptions by the head of the household, and, although it is a direct encroachment upon the resources out of which other creditors must be paid, yet the debtor is nevertheless entitled to his exemptions out of the balance of the property. This waiver of the homestead or of the exemptions by a debtor does not operate as a waiver in favor of any other creditors. The right to mortgage and otherwise waive this exemption in favor of one creditor is sustained in numerous cases. McCenville v. Lee, 31 Ohio St. 447; Niehaus v. Faul, 43 Ohio St. 63, 1 N. E. 87; in re Beede, 19 N. B. R. 68, Fed. Cas. No. 1,226; In re Poleman, 5 Biss. 526, 9 N. B. R. 376, 19 Fed. Cas. 918; Bush, Bankr. pp. 85, 90; In re Jones, 2 Dill. 343, 13 Fed. Cas. 931; Branderburg, Bankr. 81 et seq. Such waiver by a debtor gives general creditors no greater rights than they had before. Even a fraudulent conveyance by a debtor for the purpose of defrauding his creditors, after being set aside, will not deprive the debtor's family of the homestead, or of the exemptions in that property to which he would have been entitled if no fraudulent conveyance had been made. Sears v. Hanks, 14 Ohio St. 298; Tracy v. Cover, 28 Ohio St. 61; Bills v. Bills, 41 Ohio St. 206; Roig v. Schults, 42 Ohio St. 165; Bankr. Act, § 66e; Brandenburg, Bankr. 81, and cases there cited; In re Peterson, 1 Am. Bankr. R. 254; In re Detert, 11 N. B. R. 293, 7 Fed. Cas. 545; Bush, Bankr. 83; Smith v. Kehr, 2 Dill. 50, 22 Fed. Cas. 584; McFarland v. Goodman, 6 Biss. 111, 16 Fed. Cas. 90; Penny v. Taylor, 10 N. B. R. 200, 19 Fed. Cas. 194. Throughout the evolution of the exemption and homestead laws in Ohio, there has been evinced a policy on the part of the legislature to preserve intact specific chattel property to the debtor, or a certain sum of money, not subject to levy and sale on execution. It could hardly have been expected that the tools, implements, and other chattels once exempted by him could last forever. Necessarily they would wear out and be consumed, and their places would be taken by others. The same will hold true in the case of the money exemptions allowed in lieu of a homestead, as provided for in the later statutes, and exemptions once claimed in the right of these statutes will not preclude the debtor from making the claim again. Act March 1, 1831 (29 Ohio Laws, p. 101, § 29); Act March 9, 1840 (38 Ohio

Laws, p. 41); Swan's St. p. 487; Act March 23, 1850 (48 Ohio Laws, p. 29). This latter act is the beginning of the Ohio homestead law. See section 2. Section 8 of the same act, as amended March 22, 1858 (55 Ohio Laws, p. 22), provides for the allowance of $300 in lieu of a homestead. This is the first act providing for the allowance in lieu of a homestead, and simply provides that the debtor shall hold exempt from execution or sale personal property not exceeding $300 in value, in addition to the amount of chattel property exempted, provided that he was not the owner of a homestead. See 2 Swan & C. St. p. 1145. This act was again amended April 9, 1869 (66 Ohio Laws, p. 48). Section 5441 was put in its present shape by the revision of 1880, the amendments of April 12, 1884 (81 Ohio Laws, p. 148), and as amended April 26, 1898 (93 Ohio Laws, p. 316). Burgess v. Burgess, 9 Ohio St. 426, has been cited as a model for the interpretation of exemption statutes. That was an interpretation of the statute exempting certain chattel property, and tools and implements to a certain amount. The purpose of the act was to preserve the implements to the debtor, with which to make a livelihood for his family. It was not intended to benefit others who might chance to be the owners of such implements. The court there followed the evident intent of the legislature. That is what ought to be done in interpreting other exemption statutes.

Now, then, we cannot consider that Mrs. Buckingham has in fact received any allowance in lieu of a homestead out of the proceeds of the sale of parcel No. 1. The court has virtually distributed the same in accordance with the priorities of liens, taking into account their relations to each other with reference to her homestead rights, pursuant to section 5440. In that adjustment, by reason of the mortgages which she had executed, she was deprived of that allowance. Not having received that allowance, she is still entitled to it, if anything remains out of the proceeds of the balance of her property. Inasmuch as she has elected to take it out of the proceeds of parcel No. 2, we are inclined to believe that she is entitled to it. In Pennsylvania the courts have interpreted the exemption laws of that state substantially in the way in which we have interpreted the statutes of Ohio. See Krauter's Appeal, 150 Pa. St. 47, 24 Atl. 603. The court there say that, in their spirit, these humane laws secure to the unfortunate honest debtor, at all times, the use and enjoyment of $300 worth of property. To hold him confined for all time to the goods once selected, or to money exempted by him, or to the property into which either may have been converted, might soon leave him without anything. If the goods or money should not be consumed in living, the former would in time undoubtedly depreciate in value, and the same improvidence that made or kept the debtor poor would ordinarily leave him little to represent that which he might attempt to barter or invest. The law has not conferred upon an officer charged with the execution of process power to make such inquiries as would enable him to determine what may have become of property and money once set off. This is a case where property had once before been set off to the debtor, and he had afterwards made a claim when a levy was made upon other property. In the argument of Mr. Crittendon, in Re Miller, 1 Nat. Bankr. N. 263, 1 Am. Bankr. R. 647, he says, "It may be true that different or several exemptions may be successively claimed by the execution debtor, if the transactions or occurrences are entirely different and distinct, and far enough apart, but not otherwise." In the Miller Case the bankrupt had actually received his commutation exempt of $300. Then, within a very short time, he claimed another like exemption, without any showing that the other had been lost, wasted, or consumed. Such a proceeding would not come within the spirit of our Ohio statutes, and the ruling in that case would not be inapplicable in an Ohio case. But in this case the bankrupt has not in fact received the exemption. In more ways than one, we think that the following rule, set down by the supreme court of Ohio in the case of Niehaus v. Faul, 43 Ohio St. 63, 1 N. E. 87, and in Cooper v. Cooper, 24 Ohio St. 488, will apply: "The right to demand an allowance in lieu of a homestead, under Rev. St. § 5441, out of the proceeds of the second sale, is to be determined by the state of facts at the time the surplus arising from such sale was finally disposed of by the court." The following decisions and authorities for the interpretation of exemption statutes sustain the ruling that a debtor may make successive claims to his exemptions, subject to such qualifications as are above indicated: 12

Am. & Eng. Enc. Law (2d Ed.) 159; Chatten v. Snider, 126 Ind. 387, 26 N. E. 166; Weis v. Levy, 69 Ala. 209; Alabama Conference v. Vaughan, 54 Ala. 443; Krauter's Appeal, 150 Pa. St. 47, 24 Atl. 603; Hanley v. O'Donald, 30 Pa. St. 261; Frost v. Naylor, 68 N. C. 325; Hall v. Hartwell, 142 Mass. 447, 8 N. E. 333; Waite v. Franciola, 90 Tenn. 191, 16 S. W. 116. The report of the trustee setting off exemptions to the bankrupt is therefore approved.

T. J. Leeser, for creditors.
Rowley & Bradley, for bankrupt.

RICKS, District Judge. This case is now before the court upon a motion to confirm the report of the referee, which sustains the action of the trustee in this case in setting off exemptions to the bankrupt. Upon the facts of this case, it seems very clear that this exemption now complained of was not in fact a second exemption in favor of the bankrupt out of the same property or the same course of judicial proceedings; but I am not prepared to say that, if the facts were as claimed by the adversary party, and the bankrupt was getting two exemptions out of the same property, such exemptions would not stand. The very elaborate and able report of the referee, it seems to me, sustains even that extreme proposition. The referee has marshaled the authorities on this question in a very complete manner, and his argument on the case is very conclusive, and I confirm it without hesitation or doubt as to its correctness.